

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-78,986-01

### EX PARTE DARRELL LYNN COCKRELL, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 1184 IN THE 31ˢᵗ DISTRICT COURT
### OF LIPSCOMB COUNTY

Keller, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

I disagree with the Court because I believe that it misconstrues Article 38.31, it fails to give appropriate deference to the habeas court, and it misreads the record as to some significant facts. I respectfully dissent.

First, Article 38.31 contains a broad definition of "deaf person," but the only remedy it provides is the appointment of an interpreter. The Court says that a deaf person is entitled to an interpreter "or other hearing assistance," and it refers to "special equipment, a stenographer, or a real-time reporter" as options. However, other hearing assistance, special equipment, a stenographer, and a real-time reporter are not options under the statute. I believe that the Court errs to rely on Article 38.31 because applicant, not understanding sign language, would not have been helped by the

remedy provided by that statute. In addressing his ineffective-assistance-of-counsel claim, the issue should instead be whether his rights under the Constitution were violated. If defense counsel failed in his duty toward applicant, it was in failing to protect his constitutional rights, not in failing to invoke Article 38.31.

Second, the Court views the record in the light most favorable to applicant rather than in the light most favorable to the habeas court's recommendation to deny relief. For instance, the Court notes that, at the hearing on applicant's motion for new trial, applicant testified that he had heard "none of" or "very little" of the trial proceedings. The Court concludes that applicant "was unable to hear most of the proceedings at trial." But the habeas court believed otherwise as to at least part of the proceedings, finding that, "Defendant did not have difficulty understanding most of the District Attorney's questions during trial." Applicant said that in spite of his hearing aids he was "unable to hear" and that he understood others solely by reading lips. The court found, however, that, "Defendant was wearing hearing aids during trial," and that "hearing aids help the Defendant with understanding word [e]nunciation." The court also found that, "Defendant testified at the [motion for new trial] hearing without difficulty and without hearing assistance." The trial court did not have to believe Applicant's testimony regarding the extent of his hearing difficulty, and in fact it did not believe his testimony. And to the extent that we may still infer credibility determinations from a recommendation to deny relief, we should infer that the habeas court did not believe applicant.

The trial court presided over the trial, the motion for new trial, and the habeas hearing. Unlike this Court, the trial court was able to view applicant's behavior during all three proceedings and decide on that basis whether applicant failed to hear adequately what was going on. That court

said, "I always watch the Defendant pretty closely and I never detected that there was a problem of the hearing issue." The court said that it never saw "any evidence" of a hearing impairment. Since the court also acknowledged at trial that it knew applicant was "hard of hearing," I understand the above statements to mean that the court never saw any evidence that applicant's hearing difficulty caused a problem with his ability to understand the proceedings. The court did not believe applicant's testimony at the motion-for-new-trial hearing, and, as shown below, the record itself supports the trial court's findings and recommendation.

Testimony at the guilt phase of applicant's trial lasted two days. The reporter's record of that portion of the trial is two volumes that comprise 364 pages. The only mention of anything related to applicant's hearing occurred at the beginning of trial:

THE COURT: If you would stand, sir. Are you Darrell Lynn Cockrell?

MR. HERRMANN: He's hard of hearing, Judge.

THE COURT: Are you Darrell Lynn Cockrell?

DEFENDANT: Yes, sir.

. . .

THE COURT: Mr. Cockrell, you heard the reading of the indictment, how do you wish to plea?

DEFENDANT: I'm not guilty, Your Honor.

Moreover, during direct examination of the complaining witness, the trial court interrupted her testimony to make sure that everyone could hear her. It looks like this was in response to the one time that applicant complained to his attorney that he could not hear a witness. The court asked:

Can you hear? Okay. Can the jury - - can everybody hear? She's just real soft spoken. I just wanted to make sure that everybody could hear her. Okay. Go ahead.

Applicant said nothing afterwards, so the court was justified in assuming that when the complainant spoke up, applicant could hear her.

Applicant did not testify at the guilt phase of trial, but he testified at punishment. When he first took the stand, defense counsel told the judge that applicant was "very hard of hearing" and that was why he was "yelling." The judge acknowledged that he knew of applicant's hearing problem and he also said, "Let us know, Mr. Cockrell, if you can't hear a question, okay?" In the twenty-six pages of applicant's testimony, I count five instances in which applicant required that a question be repeated. Each time, once the question was repeated, applicant answered it. In one or two of these instances, it is not even clear that applicant failed to hear the question, as opposed to simply failing to understand the meaning of it. He answered every question that was asked of him with an appropriate answer, only a few questions had to be repeated, and no question had to be repeated more than once.

When the judge asked at the motion-for-new-trial hearing whether applicant could hear him, he said, "No, sir," but that he could read lips. Of the roughly twenty-two questions posed to applicant, six required repetition. Again, applicant was able to answer the questions after they were repeated, although, when answering the prosecutor's questions, he sometimes required a second repetition.

The court told applicant to let them know if he could not hear a question, and that is exactly what applicant did. The record fully supports the trial court's findings regarding applicant's ability to hear the proceedings.

Third, the Court is mistaken in finding significance in the fact that counsel's legal assistant communicated with applicant during trial by written notes. The Court believes that this was an

example of an ineffectual and inadequate attempt by trial counsel to ensure that applicant could hear the testimony and assist in his own defense. It was not. Counsel said that that is his customary way of communicating with defendants during trial "because it is easier and less disruptive." Communicating by notes during trial was not related to applicant's hearing impairment.

The Court is also mistaken in saying that counsel knew applicant was "deaf." To the contrary, counsel said that he knew applicant had a hearing problem but he could always communicate with his client, and that only applicant could speak as to how much he heard after the first break. Counsel said that "[i]t may be" that he did not know the extent of the problem. Counsel clearly did not believe that applicant was deaf: counsel explained in his affidavit that the reason that he did not make arrangements for hearing assistance at the trial was that he could always communicate with his client. Yes, counsel knew applicant had a hearing impairment, but if counsel's efforts to accommodate applicant's impairment resulted in applicant understanding what went on at trial, then applicant's constitutional rights were not violated, and counsel's representation was not deficient. As a practical matter, not every hearing-impaired defendant needs an interpreter. Sometimes informal accommodation is all that is necessary.

The Court says that the issue here is not whether applicant could communicate with his attorney, but whether he could hear the witnesses against him. As to his hearing loss, however, applicant's amended motion for new trial alleges otherwise. It claims only that:

> The Defendant in this cause is hearing-impaired by law and receives disability from such impairment. Defendant was unable to effectively communicate with his trial counsel, Paul Herrmann, as a result of this impairment and; therefore, could not adequately assist in his own defense.

As noted above, applicant did testify at the hearing on the motion for new trial that he could not hear most of what the witnesses said, but that was not the allegation in his motion for new trial. And, of

course, the trial court appears, by its recommendation, to have rejected this testimony.

The question here is not whether applicant would have been entitled to an interpreter if counsel had asked for one at trial. The question is whether a defendant who alleges any degree of hearing impairment may wait until after trial to claim that he could not understand the proceedings For all I can tell from the record, this was just a normal trial, where counsel and the trial court were aware that applicant had difficulty hearing, where that difficulty was adequately accommodated by informal measures, and where applicant was able to understand the proceedings, even if a few questions did have to be repeated. There is absolutely nothing in the record of the trial proper that would even suggest anything else. Viewed in the light most favorable to the trial court's ruling, the record does not support the Court's conclusion that these informal measures were ineffectual or that counsel rendered ineffective assistance.

I respectfully dissent.

Filed: March 12, 2014
Publish